MANN, Judge.
One Saturday, shortly after he was advised that his accidental dismemberment policy was in effect, Jack McQure went hunting. He had planned to go with his son, but the boy couldn’t go, so McClure went alone. Late that afternoon, south of the hospital in Bradenton, McClure’s shotgun discharged, severing his arm.
*591 There are two versions of the story. McClure said that his memory of the accident was not clear, but that he remembered going across some railroad tracks. One nurse testified that he told her he was pulling out of a service station and saw out of the corner of his eye that the gun was falling toward him. Wherever it happened, McClure said that he grabbed the gun and it went off. He thought it was unloaded, but it wasn’t. He remembered that the hospital was on U.S. 41 near the river and he speeded up and drove to the emergency room. Continental introduced evidence that McClure, separated from his wife and plagued by money worries, had told her that he would have some money soon, that he had this policy and that he was going to take a power saw and cut his arm off and collect on the policy.
Appellant complains that the plaintiff was allowed to introduce testimony of expert gunsmiths showing that the shotgun was defective and would discharge when struck by a sharp blow. In fact, one shell, stripped of pellets, was discharged in the courtroom to prove the point. Yet the defendant was not allowed to show to the jury a motion picture taken during several runs across the railroad tracks south of the hospital, with the shotgun in the position McClure said it was in at the time of the accident. In the motion picture the gun did not move. This motion picture and the testimony of the engineer under whose direction it was taken were excluded by the trial judge because the circumstances were not shown to have been comparable. The movies were taken a year and a half after the accident. McClure’s car had been sold and subsequently junked. Although there is an allegation that the car used for the tests was in all respects like McClure’s, there are many variables such as tire pressure, condition of shock absorbers, and the like, which make the car in which the experiment was run a doubtful duplicate of McClure’s, and we think the trial judge did not err in excluding the motion pictures.
The defendant’s point was that the tracks were relatively smooth and that the shotgun could not have been dislodged accidentally while McClure passed over them. There is other evidence in the record tending to establish this point. There were still photographs and the testimony of the railroad’s roadmaster in charge of maintenance of the tracks in question.
The question is not whether motion pictures are admissible in evidence, and the annotation at 62 A.L.R.2d 686 is not particularly useful in this case. If the issue were whether, for example, a person claiming to be incapacitated had in fact been engaging in physical activity he claimed to be impossible, motion pictures authenticated as to time and identity of the claimant and otherwise might be unexceptionable. See 62 A.L.R.2d at 698 et seq. See also 2 Jones, Evidence, § 456. Here the question is one conceptually different and explained more clearly than we can explain it by Wigmore in his treatise. 2 Wigmore, Evidence 3d ed. §§ 441^148. It is not a question of relevancy. The condition of the railroad tracks which McClure says jarred his shotgun is unquestionably relevant. The evidence was excluded by the trial judge, in the exercise of what has mistakenly been called judicial discretion, as tending toward confusion of issues. We say mistakenly because it is not a question of discretion. The judge cannot arbitrarily decide one way or the other. It is simply a question as to which the large number of variable factors requires the trial judge, better able than are we, to determine whether the reception of 4416 motion picture raises collateral questions which would tend to confuse rather than enlighten the jury.
The difference between the evidence received from plaintiff’s gunsmiths and that embodied in defendant’s motion pictures is that the plaintiff seeks to prove the possibility of an occurrence and the defendant is attempting to show from a few instances that an occurrence could not, or probably did not, happen as the plaintiff claims. See 2 Wigmore, op. cit. § 448. The *592 films were taken shortly before trial, ex parte. The exact re-enactment of the scene is impossible. The trial judge properly held that this experiment was not under demonstrably similar circumstances.
Affirmed.
HOBSON, A. C. J., and PIERCE, J., concur.